FILED
Clerk
District Court
JUN 30 2017
for the Northern Mariana Islands
By_____
(Deputy Clerk)

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| OBAYDUL HOQUE BHUIYAN,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>UNITED STATES OF AMERICA,<br><br>　　　　Defendant. | Case No.: 14-cv-00013<br><br>**DECISION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS** |

## I.　INTRODUCTION

This is a civil case brought by Plaintiff Obaydul Hoque Bhuiyan ("Bhuiyan") against the United States pursuant to the Federal Torts Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671-2680 and a claim for declaratory relief, 28 U.S.C. § 2201. Bhuiyan alleges that the United States Citizenship and Immigration Service ("USCIS") negligently granted his I-360 application and later revoked it, and that he relied on the grant to his detriment as he did not timely seek any other immigration status in order to establish lawful presence in the Commonwealth of the Northern Mariana Islands. (First Amended Complaint (FAC) ¶¶ 33-34, ECF No. 16.) He further seeks a declaration that he was lawfully present in the CNMI during the period of federal immigration control. (*Id*. at 11, ¶ 2.) Presently before the Court is the Government's motion to dismiss the entire

FAC for lack of subject matter jurisdiction and failure to state a claim upon which relief may be granted. The matter has been fully briefed.[1] For the reasons set forth below, the motion is granted.

## II. BACKGROUND

Bhuiyan is a citizen of Bangladesh who first came to the CNMI in 1996. (FAC ¶¶ 2, 4.) At that time, U.S. immigration laws did not apply in the CNMI. Instead, the CNMI Government administered and enforced its own immigration laws. From 1996 to 2004, Bhuiyan's immigration status under CNMI law was that of a nonresident worker. (FAC ¶ 5.) On or about March 5, 2004, Bhuiyan married Ana Atalig, a U.S. citizen residing in the CNMI. (FAC ¶ 6.) After his marriage, Bhuiyan applied for and was issued an Immediate Relative of a Citizen ("IR") permit by the CNMI government, which he renewed in 2005 and 2006. (FAC ¶ 7.) On July 7, 2006, approximately two years and three months after their marriage, Bhuiyan's wife Ana died. (FAC ¶ 8.) Following Ana's death, Bhuiyan continued to lawfully reside in the CNMI under his IR permit from 2007 to 2009. (FAC ¶ 9.) In 2009, Bhuiyan received an umbrella permit[2] from the CNMI government based on his IR status, which conferred upon him lawful immigration status through November 27, 2011. (FAC ¶ 9; Ex. A, ECF No. 16-1.)

In 2008, the U.S. Congress enacted Title VII of the Consolidated Natural Resources Act of 2008 ("CNRA"), *see* Pub. L. No. 110-229, which provided that federal immigration laws would apply in the CNMI beginning on November 28, 2009 and that federal law, including the CNRA's

---

[1] Defendant's Motion to Dismiss, ECF No. 18; Memorandum in Support of Motion to Dismiss ("Memo"), ECF No. 19; Plaintiff's Opposition to Motion to Dismiss ("Opposition"), ECF No. 22; Defendant's Reply to Plaintiff's Opposition to Motion to Dismiss ("Reply"), ECF No. 25; Plaintiff's Surreply to New Issues Raised in Reply Brief ("Surreply"), ECF No. 32.
[2] During the last weeks of immigration control by the CNMI government, the CNMI Department of Labor issued two-year conditional permits to alien workers to allow them to stay and work in the CNMI until November 27, 2011. These permits were commonly referred to as "umbrella permits."

transitional provisions, would "supersede and replace all laws, provisions, or programs of the Commonwealth relating to the admission of aliens and the removal of aliens from the Commonwealth." *Id*. sec. 702(a), § 6(f). Under the CNRA's grandfather provisions, an alien lawfully present under the CNMI immigration laws as of the program's effective transition date may remain in the CNMI until the expiration of the alien's authorized period of stay or until November 27, 2011, whichever is earlier. *See* 48 U.S.C. § 1806(e)(2).

Before his umbrella permit expired, Bhuiyan filed a Form I-360 (Petition for Amerasian, Widow(er), or Special Immigrant) seeking immigrant classification as a widower of a U.S. citizen. (FAC ¶ 16; Ex. C, ECF No. 16-3.) On or about September 27, 2011, USCIS approved Bhuiyan's Form I-360 petition. (FAC ¶ 17; Ex. D, ECF No. 16-4.) About a month later, Bhuiyan filed a Form I-485 Application to Register Permanent Residence or Adjust Status. (FAC ¶ 18.) On November 27, 2011, Bhuiyan's umbrella permit expired. (FAC ¶ 9.) In reliance on the approval of his Form I-360, Bhuiyan did not apply for CW-1 transitional worker nonimmigrant status or any other federal immigration status which would allow him to lawfully reside in the CNMI. (FAC ¶ 19.)

On or about August 17, 2012, USCIS revoked Bhuiyan's previously approved Form I-360, stating that it had been "inadvertently approved" because Bhuiyan was statutorily ineligible on two separate grounds: (i) he had been married for more than two years on the date he became a widower, and (ii) he had not filed the Form I-360 within two years of his wife's death. (FAC ¶ 20; Ex. E, ECF No. 16-5.) Following the revocation, USCIS denied Bhuiyan's Form I-485 application and denied his application for humanitarian parole. (FAC ¶¶ 21-22; Ex. F, ECF No. 16-6; Ex. H, ECF No. 16-8.) USCIS immediately issued a notice to Bhuiyan to appear for removal proceedings for failing to possess a valid unexpired immigrant visa. (FAC ¶ 23; Ex. I, ECF No. 16-9.) On or about May 8, 2013, USCIS filed a motion to administratively close removal proceedings against

Bhuiyan for a period of six months but reserved the right to reopen the matter at any time. It never did so. (FAC ¶ 24; ECF No. 16-10.) USCIS then granted Bhuiyan humanitarian parole-in-place in the CNMI for a period of one year through December 1, 2015. (FAC ¶ 28.)

### III. PROCEDURAL HISTORY

On June 6, 2014, Bhuiyan commenced the instant action, and after a series of status reports over a period of two years due to settlement negotiations, filed his First Amended Complaint on June 27, 2016, invoking this Court's jurisdiction pursuant to the Federal Tort Claims Act, 28 U.S.C. § 1346(b)(1). (FAC ¶ 1.) Bhuiyan seeks damages for negligence, a declaration that his presence in the CNMI was lawful from November 28, 2009, through November 3, 2015, and a prohibitory injunction barring the Government and its agents from asserting in any context that he had accrued unlawful presence during that time period. (FAC at 11, Prayer for Relief ¶¶ 1-3.) USCIS reopened Bhuiyan's previously revoked I-360 visa petition, and the pending removal proceeding was terminated without prejudice. (Memo at 4; Ex. L, Order of the Immigration Judge, ECF No. 16-12.) On November 14, 2014, USCIS also reopened Bhuiyan's Form I-485 petition. (Memo at 4; Ex. 1, Screenshot of Case Status re I-485, ECF No. 19-1.) Bhuiyan administratively appealed the revocation of his Form I-360 to the Board of Immigration Appeals (BIA). (Memo at 4; Ex. 2, Decision of the Board of Immigration Appeals ("BIA Decision"), ECF No. 19-2.) On November 3, 2015, Bhuiyan departed the CNMI to return to his country of citizenship, Bangladesh. (FAC ¶ 29.) Following his departure, the BIA dismissed Bhuiyan's appeal of the DHS Director's decision revoking the previously approved Form I-360 visa petition as meritless. (*See* BIA Decision.)

### IV. STANDARD OF REVIEW

The Government moves to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. When a party files a motion to dismiss for lack of subject matter

jurisdiction under Rule 12(b)(1), the non-moving party bears the burden of establishing by a preponderance of the evidence that the Court has subject matter jurisdiction. *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014) (citing *Harris v. Rand*, 682 F.3d 846, 851 (9th Cir. 2012)). A motion to dismiss under Rule 12(b)(1) for lack of jurisdiction may be facial or factual. In a facial attack, the defendant accepts the truth of a plaintiff's allegations but asserts that they are insufficient to invoke federal jurisdiction. *See White v. Lee,* 227 F.3d 1214, 1242 (9th Cir. 2000). In reviewing a facial attack, the court accepts the plaintiff's allegations as true and draws all reasonable inferences in plaintiff's favor in determining whether the allegations are sufficient to invoke the court's jurisdiction. *Pride v. Correa*, 719 F.3d 1130, 1133 (9th Cir. 2013).

On a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6), the Court will dismiss a claim if the plaintiff fails to plead "enough facts to state a claim for relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Court must construe the allegations and facts in the complaint in the plaintiff's favor, but "courts are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555-56 (internal quotation marks and citations omitted).

## V. DISCUSSION

*A. Bhuiyan's FTCA Claim*

The Government seeks dismissal of Bhuiyan's FTCA claim for lack of subject matter jurisdiction, improper venue, and failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(1),

12(b)(3), and 12(b)(6), respectively. (Reply at 2.) [3] The court will address each of the arguments below.

### 1. Sovereign Immunity and the Private Person, Local Law Analog Requirement

The United States maintains sovereign immunity, except to the extent that it consents to be sued, and the terms of its consent are within a court's jurisdiction to hear the suit. *Hornbeck Offshore Transp., LLC v. United States,* 563 F. Supp. 2d 205, 209 (D.D.C. 2008) (citing *Lehman v. Nakshian,* 453 U.S. 156, 160 (1981) (internal citations omitted)); *Hodge v. Dalton,* 107 F.3d 705, 707 (9th Cir. 1997). One instance where the United States consents to be sued is in the FTCA that provides a limited waiver of sovereign immunity under which individual citizens can sue the United States for certain tort claims. The FTCA subjects the United States to liability only "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674; *see id.* § 1346(b)(1) (conferring exclusive jurisdiction on federal district courts for FTCA damages claims "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred"). The FTCA "does not create a cause of action against the United States; it allows the United States to be liable if a private party would be liable under similar circumstances in the relevant jurisdiction." *Hornbeck Offshore Transp., LLC v. United States*, 569 F.3d 506, 508 (D.C. Cir. 2009); see also *Woodbridge Plaza v. Bank of Irvine,* 815 F.2d 538, 543 (9th Cir. 1987) ("the FTCA applies only if state law would impose liability on private persons under similar circumstances"). While the

---

[3] The Government's motion to dismiss initially addressed the original complaint, not the FAC. Bhuiyan's opposition was therefore mainly based on clarifying the Government's misunderstanding of his claims. The Government's reply contains its actual arguments to the FAC, and Bhuiyan's surreply contains his rebuttal to said arguments.

private person analog need not be exact, the court's job in applying the standard is "to find the most reasonable analogy." *LaBarge v. Mariposa Cty.,* 798 F.2d 364, 367 (9th Cir. 1986); *see also Westbay Steel, Inc. v. United States,* 970 F.2d 648, 650 (9th Cir. 1992). When there is no analogous private tort liability, the district court must dismiss the action for lack of jurisdiction. *See e.g., Akutowicz v. United States,* 859 F.2d 1122, 1125-26 (2d Cir. 1988) (affirming the district court's dismissal of the FTCA claim for failure to satisfy the private analog requirement with respect to the government's allegedly wrongful revocation of citizenship).

### 2. *Local Law Requirement as Applied to Bhuiyan*

Here, the specific Government action that underlies Bhuiyan's putative claim is "the negligent approval of his [I-360] application." (FAC ¶ 35.) Bhuiyan alleges that the Government: (1) had a duty to exercise reasonable care in the processing and determination of applications for benefits and (2) breached that duty. (FAC ¶¶ 31-32.) This is the only Government action to which Bhuiyan's claim extends.

The Second Circuit's opinion in *Akutowicz v. United States* is particularly instructive in evaluating the Government's motion to dismiss the instant case. *Akutowicz* involved a citizen challenging the Department of State's wrongful revocation of his U.S. citizenship. *Akutowicz,* 859 F.2d at 1124. The Department of State initiated a five-year investigation into whether Akutowicz had expatriated himself under provisions of the Immigration and Nationality Act of 1952. *Id.* at 1123. It determined that he did, and therefore revoked his U.S. citizenship. *Id.* When Akutowicz appealed the revocation, the Department's Board of Appellate Review reversed the Department's decision and reinstated Akutowicz's citizenship. *Id.* at 1124. Akutowicz then filed suit pursuant to the FTCA alleging, *inter alia*, that the Department "wrongfully fabricated and distorted information relevant to his case, enabling it negligently to deprive him of his citizenship." *Id.*

7

Applying the requisite FTCA standard, the Second Circuit found that "the withdrawal of a person's citizenship constitutes a quasi-adjudicative action for which no private analog exists." *Id.* at 1126. Furthermore, the Second Circuit pointed out that neither party raised any analogous private cause of action. *Id.*

Similarly, this Court is unable to find a duty under CNMI or Vermont law—and Bhuiyan's brief likewise fails to submit one—that is analogous to the Government's alleged duty to accurately process immigration benefits. Both jurisdictions are mentioned because the Government claims that Vermont is "the place where the act or omission occurred" pursuant to 28 U.S.C. § 1346(b)(1) since USCIS granted Bhuiyan's visa petition there. (Reply at 3.) On the other side, Bhuiyan received notice in the CNMI of his visa petition's approval and subsequent revocation. (Approval Notice for I-360, ECF No. 16-4; USCIS Letter Revoking Approval, ECF No. 16-5.) Bhuiyan has not pointed to CNMI or Vermont state law where the court imposed a duty of care on a private person analogous to the Government's duty of care to accurately process applications for immigration benefits. *See Butt v. United States*, 714 F. Supp. 2d 217, 218-219 (D. Mass. 2010) (FTCA claim dismissed for lack of jurisdiction because "plaintiff has pointed to no Massachusetts law which imposes a duty of care on a private person in a situation that is analogous to the government's failure to timely process a visa application."). Without a private analog under CNMI or Vermont law, such a claim must fail.

Bhuiyan cites to three cases from other jurisdictions in which the courts have recognized a duty of care in the processing of applications, but these cases cite to the negligence law of the respective states and highlight state case law recognizing when a duty of care arises in a negligence action. Bhuiyan cannot simply state that the United States owed him a duty; he must demonstrate that a similar situation, under state law, would confer an analogous duty. The government action

8

challenged by Bhuiyan does not have a reasonable private analog, under CNMI or Vermont law, such that the United States may be held liable under the FTCA. Accordingly, the Court lacks subject matter jurisdiction to hear Bhuiyan's FTCA claim.[4]

### B. Bhuiyan's Claim for Declaratory Relief Regarding the Accrual of Unlawful Presence in the CNMI from November 28, 2009 through November 3, 2015

The Government seeks dismissal of Bhuiyan's claim for declaratory relief regarding the accrual of unlawful presence in the CNMI as moot. (Reply at 10.) The Government argues that the time is not ripe for Bhuiyan to seek judicial relief relating to a future determination of unlawful presence in the CNMI. (Memo at 9.) The Government points to the fact that Bhuiyan has not filed any immigration application with USCIS that has resulted in a finding of unlawful presence, and that USCIS does not pre-adjudicate applications that may be filed at some point. (*Id.*) Bhuiyan contends that his claim is ripe for adjudication in order "to resolve a looming issue *before* it comes to a head in this way." (Opp'n at 4-5.) Bhuiyan further argues that ripeness in the declaratory judgment context means looking at "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." (Opp'n at 6) (internal citations omitted). Bhuiyan points to the removal proceedings as evidence of the adversity of interest, and the administrative termination of such proceedings without prejudice as evidence that

---

[4] The Court further acknowledges the Government's other arguments for dismissal under Rule 12(b)(6), including how Bhuiyan could not now seek a grant of humanitarian parole-in-place nor an adjustment of status via his Form I-485 since his voluntary departure from the CNMI during the pendency of this case automatically terminated both proceedings by operation of law. (Memo at 7-8.) However, Bhuiyan later clarified that he seeks neither form of relief in the FAC. (Opp'n at 2-4.) Both arguments are therefore denied. Absent subject matter jurisdiction, the Court need not address the Government's motion to dismiss Bhuiyan's FTCA claim for improper venue or failure to state a claim under Fed. R. Civ. P. 12(b)(6).

9

the issue of unlawful presence remains an open one. (Opp'n at 6.) For the following reasons, the Court disagrees and grants the Government's motion to dismiss.

Under Article III, Section 2 of the U.S. Constitution, an action must present a live "case or controversy" in order to be reviewable by a federal court. *See Spencer v. Kemna,* 523 U.S. 1, 7 (1998). To satisfy this requirement, a litigant must have suffered some actual injury that can be redressed by a favorable judicial decision. *Iron Arrow Honor Society v. Heckler,* 464 U.S. 67, 70 (1983) (citing *Simon v. Eastern Kentucky Welfare Rights Organization*, 426 U.S. 26, 38 (1976)). The case or controversy must exist at all stages of federal court proceedings. *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 397 (1980).

Here, Bhuiyan fails to present any live claim or controversy regarding accrual of unlawful presence. At no point during his presence in the CNMI did Bhuiyan suffer some actual injury as a result of a determination by USCIS or its appellate board that he had accrued unlawful presence. When Bhuiyan appealed the February 4, 2015 decision by USCIS revoking his previously approved visa petition, the BIA dismissed the appeal on other, unrelated grounds.[5] (BIA Decision at 2-3, ECF No. 19-2.) Furthermore, when Bhuiyan departed the CNMI on November 3, 2015 while still holding humanitarian parole status, his reopened and pending Form I-360 and Form I-485 petitions were deemed abandoned by operation of law. *See* 8 C.F.R. § 245.2(a)(4)(ii)(A) ("Except as provided in paragraph (a)(4)(ii)(B) and (C) of this section, the departure of an applicant who is not under exclusion, deportation, or removal proceedings shall be deemed an abandonment

---

[5] The BIA concluded that the publication upon which Bhuiyan relied merely provided general information about the recently enacted amendment. The BIA further concluded that the amendment was not applicable to Bhuiyan, who could have filed a Form I-360 prior to the amendment but lost the ability to do so by failing to file any time before July 7, 2008. (BIA Decision at 2-3.)

of the application constituting grounds for termination of any pending application for adjustment of status"); 8 C.F.R. § 212.5(e)(1) ("Parole shall be automatically terminated without written notice (i) upon the departure from the United States of the alien."). Bhuiyan therefore fails to point to any decision or order, pending or otherwise, resulting in a finding of unlawful presence that has triggered a ground of inadmissibility for which this Court can review and provide any relief. In addition, the issue of accrual of unlawful presence did not trigger until Bhuiyan left the CNMI; it remained a non-issue from the time he initiated this action up until his departure. The Government makes further arguments in favor of dismissal under Rule 12(b)(6) due to Bhuiyan being statutorily ineligible for the immigration benefit he sought. (Memo at 10.) However, because Bhuiyan clarifies that he does not dispute USCIS properly revoking his petition, the Court rejects such arguments as inapplicable to the FAC. (Opp'n at 4.) Accordingly, the Court dismisses the claim for declaratory relief regarding the accrual of unlawful presence in the CNMI for lack of subject matter jurisdiction.

## VI. CONCLUSION

For the foregoing reasons, the Court grants the Government's motion to dismiss the entire FAC for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1). The Clerk of Court is directed to close the case.

SO ORDERED this 30th day of June, 2017.

RAMONA V. MANGLONA
Chief Judge